FLECK et al. v. NEERENBERG.

(Supreme Court, Appellate Term. December 17, 1903.)

1. SALES—ACTION FOR PRICE—PAYMENT—EVIDENCE.

Where, in an action for the price of goods sold, defendant pleaded payment, evidence tending to show that defendant had at other times, and with other persons, "been short" in the payment of his bills, was incompetent.

2. APPEAL—REVIEW—NECESSITY OF OBJECTIONS.

On an appeal from a judgment of a Municipal Court of the city of New York to the Appellate Term of the Supreme Court it is the duty of the latter to examine the facts as well as the law, and to reverse the judgment for errors in the admission of testimony, when such reversal is in the interest of justice, without regard to whether objections or exceptions were taken to the offered testimony at the trial.

3. PAYMENT.

In an action for a balance due on the price of goods sold, in which defendant pleaded payment, a judgment in favor of plaintiff *held* contrary to the weight of evidence.

Bischoff, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Samuel Fleck and another against Harris Neerenberg. From a judgment in favor of plaintiffs, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and BISCHOFF and BLANCHARD, JJ.

J. Leon Brandmarker, for appellant.
W. Bennett Marx, for respondents.

BLANCHARD, J. This is an appeal by defendant from a judgment of a Municipal Court of the city of New York. The action is brought to recover the sum of $100, alleged by the plaintiffs to be due from defendant as a balance of a bill for goods sold and delivered. The defendant pleads payment, and in support of this defense introduced in evidence a bill which had been made out by the plaintiffs, receipted by them, and then delivered to the defendant. This bill includes the amount of the balance claimed by plaintiffs. The plaintiffs thereupon introduced evidence to show that the receipting of this bill was the result of a mistake on the part of the plaintiffs' bookkeeper. This bookkeeper testified, in substance, that on November 25, 1902, the defendant called at plaintiffs' place of business to pay the bill; that for this purpose he handed over to the bookkeeper certain checks and cash, which the bookkeeper testified he then and there, in the presence of defendant, noted down and checked off on a memorandum as follows: $14.28, $10.26, $7, $10, $153, $5.46. The bookkeeper further testified that he then added up these items, and put down in the memorandum the erroneous total of $300, when in fact it should have been $200; that he then receipted the defendant's bill for $298.39, and handed it over, with $1.61 change, to defendant, who went away. This bookkeeper further testified that he counted the money and checks at the time, and that the defendant also counted the money and checks as he passed them over to him; that the error in the amount paid was not discovered by the bookkeeper until four hours after the defendant had left. The defendant testified that he paid the bookkeeper $300 in checks and cash; that he counted the items once, and that the bookkeeper counted them twice, and then stated that the amount was $300; that he did not see the bookkeeper make the memorandum of the items; that the payment was made after 11 o'clock a. m., and that he was first notified by plaintiff of the alleged shortage between 7 and 8 p. m. of the same day.

The question to be determined by the trial court was whether the defendant paid $200 or $300. Upon this point the testimony of the plaintiffs' bookkeeper and that of the defendant is diametrically opposed. Both are interested witnesses, but, aside from that fact, there is nothing tending to show but that each are equally credible. The defendant's testimony that he gave the plaintiffs' bookkeeper $300, partly in checks and partly in bills, and that among the latter were $1 and $2 bills, and his failure to explain why he gave the bookkeeper $300, receiving from him $1.61 in change, when the sum of $299 would cover more than the amount of his indebtedness to the plaintiffs is a

circumstance that tinges his version with some improbability. On the other hand, the defendant introduced in evidence a receipted bill for other goods purchased by him from the plaintiffs, dated November 28, 1902, being one week later than the date of the receipted bill, which is in dispute in this action. The balance of $100 claimed by the plaintiffs to be unpaid on the bill of November 21, 1902, does not appear in this later bill of November 28th.

Another circumstance tending to sustain the defendant's claim is this: The plaintiff testified that his bookkeeper called him up and said "he was short in his cash that day"; that "in looking over his accounts and adding up the different items he found a difference of $100." He further testified that his daily cash transactions were very large, amounting sometimes to $2,000 or $3,000, and that on the day named they had received $1,200 in cash. The bookkeeper testified that he kept the sum paid him by the defendant separate from the other moneys paid in that day, and at first he said he "put all the other money separate also," but subsequently admitted that the money paid him by the defendant was the only money paid in that day that was kept separate, and that this money he marked with defendant's name. Why he kept the money paid by defendant in a separate package with his name marked thereon he does not explain, and it appears that the day's receipts were all kept in one cash drawer. If this were true, that defendant's payment was kept by itself, it would seem that the bookkeeper would have testified that he discovered his alleged shortage in that particular package, and it is reasonable to assume that upon the discovery thereof he would have taken the package to the defendant at the time he and the plaintiff went to defendant's place of business, and would have then claimed that the money and checks were in the same condition as when they were received by him. At least he would have kept an accurate statement of the checks and cash received by him, so as to be able to say exactly as to the amounts of each item when called upon to do so. He says, however, that he is unable to say how much of the amount paid to him by defendant was in checks and how much in cash.

Judging the testimony of the most interested witness by the probabilities, there is as much, if not more, to be urged in favor of the truthfulness of the defendant's contention as in that of the bookkeeper, and it might well be said that the plaintiff had failed to sustain the burden of proof by showing that his receipt, which was presumptive evidence of payment, was given by mistake; and it will be seen that there is much that is susceptible of explanation which may throw light upon the main question. During the course of the trial much incompetent and improper testimony was introduced by the plaintiffs tending to show that the defendant had at other times and with other persons "been short" in the payment of his bills. Although this testimony was admitted without objection, we cannot say that it did not materially influence the trial judge to the prejudice of the defendant; and it is the duty of this court to examine the facts as well as the law, and we may reverse when, in our judgment, the interests of justice require it, without objection or exception being taken to offered testimony. The testimony in the case is closely balanced, and in such

a case the province of the court below to determine where the truth lies should not ordinarily be usurped, but a claim similar to the one sought to be enforced herein is easily made, and with difficulty refuted, and, in view of the extreme uncertainty herein as to which party is in the right, we think a new trial should be ordered.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

FREEDMAN, P. J., concurs.

BISCHOFF, J. (dissenting). I am unable to agree to a reversal of the judgment upon the ground stated in the prevailing opinion that it is against the weight of the evidence, owing to a firm sense of the accuracy of the conclusion of the court below. It was competent to the parties in the cause at bar to elect to go to trial before the justice without a jury, and so to constitute him the trier of the facts, and his determination of them should be given the same respectful consideration which would be given to a verdict, not more and not less, to be disturbed only for the same reasons which would justify an interference with the latter. It is not a singular experience of judges that their impressions from the evidence are at variance with those of a jury, and that the facts would have been differently decided had they been committed to the judge. He may view the probabilities as pointing one way, while the jury have taken a different view; and the conflict is often, if not always, the result only of a difference in the degree of practical experience. It is the settled rule, therefore, that the findings of the trial court are never to be reversed, unless the reviewing tribunal can say that they are so palpably against the probabilities, so irreconcilable with the evidence, that injustice is at least reasonably apparent. A mere difference of views as to what is or what is not probable or improbable has never been held to afford any proper ground for reversal, however much the reviewing tribunal may be persuaded that it would have decided the facts otherwise. It is always incumbent upon him who asserts error to establish it, and, unless injustice of the verdict or finding is at least a reasonable deduction from the evidence, he must be deemed to have failed. The action was to recover $100, the balance of the purchase price of goods sold and delivered to the defendant, and the latter pleaded payment. He produced a receipted bill, admittedly genuine, for $298.39, thus covering the full amount of the indebtedness. So far, therefore, the defense was prima facie established. Thereupon the plaintiffs' bookkeeper, called as a witness for his employers, testified that the payment was made to him, and that the receipt was given by him under a mistake; that at the time of the payment he received from the defendant a number of checks with some bank bills, and that he computed the aggregate amount at $300, returning $1.61 in change; that he kept the payment made by the defendant apart from the payments made by other customers, amounting to about $840, and later, on the same day, discovered that he had actually received from the defendant but $200, of which fact he notified him in the evening. To meet this impeachment of the receipt, the de-

fendant, admitting the receipt of $1.61 in return change, testified that he gave the bookkeeper $300, partly in checks and partly in bank bills, as the latter had stated, and that among the bills were some of the denomination of $1 and $2. To the inquiring of the plaintiffs' counsel: "Will you explain to the court, if your bill was $298.39, why did you give him $300? Why didn't you give him $299, since there were one's there?" the defendant answered "If my bill is $298, I make out $300; if my bill is $201, I cannot pay $202, and I give him $200; and if it is $100, I take the money from my hand and make it $100; and he said it is about $300, and I counted out and I took that money from my hand." The bill receipted was for goods purchased November 25, 1902, so that. it was a fair assumption that the defendant was apprised of the exact amount of his indebtedness before he parted with his money, and, indeed, there is nothing in the record to the contrary. In view of that fact and the evasiveness of the answer, the justice was moved to seek a further explanation from the witness; but he stood mute. The above is, in substance, all of the testimony bearing directly upon the actual payment, and given concededly by the only witnesses present and participating in the transactions; and it is to be noticed that the question to be decided had been narrowed down to one of veracity—which one of these two witnesses, the plaintiffs' bookkeeper or the defendant, had spoken the truth? Both witnesses were interested in the outcome of the trial, and so far their credibility was evenly balanced. Without more, therefore, it may be said that the receipt was not impeached, and that the defendant should have prevailed in the action. But the defendant's story of an overpayment, and admission of $1.61 in return, knowing at the time what his indebtedness actually was, and having with him the means of covering it by the payment of $299 only, carried with it some degree of improbability, which was sufficient to turn the scales of credibility in the bookkeeper's favor, and, discrediting the defendant's testimony, the receipt remained impeached, and the judgment for the plaintiffs necessarily resulted.

A motive for the defendant's untruthfulness was apparent. He had necessarily to swear to an intentional overpayment to support his contention that the bookkeeper's computation of the amount paid at the time of the receipt, $300, was correct. But the prevailing opinion argues the bookkeeper's testimony was inconsistent with itself, in that at one time he claimed to have kept all payments apart from each other, and then admitted that such was not the case; and this it is urged destroyed his credibility, balanced the probabilities, and left the preponderance of the evidence with the defendant. Now what actually occurred upon the trial was this: The bookkeeper testified that he kept the defendant's payment to him apart from the payments of other customers on the same day, and then, when asked upon cross-examination, "Did you put all the other money separate also?" answered, "Yes, sir." To the very next question, however, "Do you mean to say that you put each one's bills separate in the drawer?" he replied "No, sir." If there is any contradiction in this, it is seeming only, and arises wholly from the way in which the questions were framed and put. Allowing for the fact that the language of the

questions was not the witness', it will be apparent that he never deviated from his statement that he kept the defendant's payment apart, though he was made to say at one time that he kept that payment apart from the payments made by other customers, and at another that he kept the payments of other customers apart from that made by the defendant. Nor is there anything improbable in his testimony that he did so. It is to be remembered that the defendant's payment was in part of a number of checks in varying amounts, and these, in the ordinary course of business, would require deposit in bank for collection, after indorsement, and this circumstance might easily have led the bookkeeper to do with the payment as he said he did. However, assuming that the bookkeeper's testimony was, in the respect mentioned, likewise tainted with some degree of improbability, it remained that it was for the trial justice to weigh the evidence, and then to determine the fact in accordance with the balance as it appeared to him. This he did, and can we say that he determined unjustly? Again, the learned justice writing the prevailing opinion regards it as a circumstance exciting suspicion that the defendant received and paid a bill of later date—November 28, 1902—for a purchase made on that day, from which all mention of $100 for a balance due on the previous purchase was omitted, and this also is urged as a counterbalance to any intrinsic improbability of the defendant's story. I fear that my Brother has confounded a mere invoice memorandum, which would not ordinarily refer to the state of the purchaser's account, with a statement of account. However this may be, it is conceded that the payment of the sum sued for was in dispute at and before the date of this later bill, and that at that time the plaintiffs had made demand therefor of the defendant. The omission alluded to therefore could not well be taken or regarded as implying an admission to the contrary.

In support of its direction of a reversal of the judgment the prevailing opinion states that incompetent evidence was admitted upon the trial. This probably alludes to testimony—to which no objection was made—that the defendant had on one occasion paid a bill to another who claimed that the payment was $1 short. This the defendant met by his denial. The evidence was, of course, irrelevant, but its admission is not urged by the appellant as invalidating the judgment appealed from, and the circumstance is of too little weight to give room for any belief that the justice below was misled thereby.

The burden of this appeal is that the judgment is against the weight of the evidence, upon which question all of the justices who have thus far been called to officiate in the cause are evenly divided; the justices of this court failing of the advantage had by the justice below, of seeing the witnesses and observing their demeanor when testifying. That this advantage is one of importance in the present case, which should not be overlooked, will appear when we reflect that it is a matter not merely of judicial, but of common, experience that an impression of untruthfulness is not infrequently conveyed by the manner in which the story is told.

The judgment should be affirmed, with costs.